## NATIONAL LABOR RELATIONS BOARD *v.* EXPRESS PUBLISHING CO.

No. 442. Argued February 14, 1941.—Decided March 3, 1941.

Mr. *Laurence A. Knapp,* with whom *Solicitor General Biddle* and *Messrs. Richard H. Demuth, Robert B. Watts,* and *Mortimer B. Wolf* were on the brief, for petitioner.

Mr. *Leroy G. Denman* for respondent.

*Messrs. Arthur E. Pettit* and *Roland Obenchain* filed a brief on behalf of the Singer Manufacturing Co., as *amicus curiae,* in support of respondent.

MR. JUSTICE STONE delivered the opinion of the Court.

The National Labor Relations Board ordered respondent affirmatively to bargain collectively with the San Antonio Newspaper Guild, the authorized representative of respondent's employees. In addition it ordered respondent, (1) to "cease and desist" from refusing to bargain collectively with the Guild; (2) to "cease and desist" from "interfering with, restraining or coercing its employees in the exercise of their rights to self-organization," and other rights guaranteed by § 7 of the National Labor Relations Act, 49 Stat. 449; 29 U. S. C. Supp. V, § 151, et seq.; (3) to post notices stating, among other things, that respondent will "cease and desist as aforesaid" and will bargain collectively with the organized representative of its employees. On the record before us the question for our decision is whether the provisions of the order which we have enumerated are supported by the Board's finding that the respondent had refused to bargain collectively with the authorized representative of its employees, and had interfered with such bargaining negotiation, and had thereby interfered with the exercise of the rights guaranteed by § 7 of the Act.

The Board issued its complaint charging respondent, a publisher of a newspaper, with refusal to bargain collectively with the Guild as the authorized representative of the employees in respondent's editorial department, and that by such refusal and by statements made by respondent at a meeting of those employees it "did interfere with, restrain and coerce" its employees in the exercise of the rights guaranteed by § 7 of the Act [1] and did

---

[1] The statements alleged to have been made by officers or agents of respondent were "Existing independent employment relations may be continued by the individual employees or by employees as a group." "No one can compel you to join any organization." And referring to respondent's treatment of its employees, it was alleged

engage in unfair labor practices defined by §§ 8 (1) and 8 (5). The usual proceedings and hearings before the Board resulted in findings by the Board to the effect that although respondent had throughout recognized the organization of respondent's editorial room employees and the Guild as their representative, and had met with the Guild representatives whenever requested for the purpose of discussing the employees' demands, it nevertheless had persistently refused to discuss in detail the proposals of the Guild, to make any counter proposals or to enter into any agreement with it, and had not negotiated in good faith in a genuine effort to compose the differences between employer and employees.

The Board found that respondent had refused to bargain as required by § 8 (5) of the Act. It found that respondent had made the statements charged in the complaint at a meeting of its employees and that these statements were an "interference with the Guild's efforts to negotiate." Treating respondent's action in refusing to bargain and in interfering with the bargaining negotiations as an infringement of all the rights guaranteed to the employees by the Act, it found broadly, in the words of the statute, a violation of § 8 (1) which declares that it is an unfair labor practice for the employer "to interfere with, restrain or coerce employees in the exercise of the rights guaranteed in section 7." Section 7 provides: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection."

---

that respondent's officer stated: "Each of you know we were not forced to do this by any labor organization and no labor organization can force us to do these things."

From all this the Board concluded that the "appropriate remedy" was an order directing respondent "upon request, to bargain collectively with the . . . · Guild" as the "exclusive representative" of respondent's editorial room employees and "if understandings are reached, to embody such understandings in a signed agreement, if requested to do so by the Guild." Having provided the recommended remedy by the provisions of its order directing the respondent to bargain and to cease and desist from refusing to bargain the Board went further and ordered broadly that respondent should in effect refrain from violating the Act in any manner whatsoever. This it did by paragraph 1 (b) of the order which directed respondent to cease and desist from

"In any manner interfering with, restraining, or coercing its employees in the exercise of their rights to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purposes of collective bargaining or other mutual aid and protection, as guaranteed in Section 7 of the Act."

It is this and the provisions of the order other than that part of it directing respondent to bargain which are the subjects of the present controversy.

Upon petition of the Board to enforce the order, the Court of Appeals for the Fifth Circuit struck from it all the provisions except that which directed respondent to bargain with the Guild on request, and to embody any understanding in a signed agreement. For so much of the order as directed the posting of notices the court substituted a requirement that respondent notify the Guild of its willingness to comply with the order as modified and to notify a specified agent of the Board what steps · respondent had taken to comply with the order. 111 F. 2d 588. We granted certiorari, 311 U. S. 638, the ques-

tions raised being of importance in the administration of the National Labor Relations Act.

Although respondent has not sought certiorari it seeks to retain such advantages as it may have gained from the modification of the Board's order below, by arguing broadly that the Board's finding of respondent's refusal to bargain is without support in the evidence, which it is said shows only that respondent refused to yield to the Guild demands as it was free to do. But in the absence of a cross-petition for certiorari by respondent that question is not open here. Without the findings relating to respondent's refusal to bargain there was no basis for any order by the Board and we think that the purpose and effect of the judgment sustaining so much of the Board's order as directed that respondent bargain with the Guild was to sustain the findings on which it was based. This appears both from the opinion of the Court of Appeals, the purport of which is that respondent in its negotiations with the Guild had not acted in good faith and so had failed to bargain as the statute requires, and also from the terms of the judgment modifying the Board's order. The judgment affirming the Board's order as modified retained, as the foundation of the judgment, the recital contained in the Board's original order that it was made upon the basis of all the Board's findings. In this state of the record our review is limited to the sufficiency of the Board's findings to support the order.

We conclude also that it is not open to respondent to challenge the judgment below, as it attempts to do, on the ground that the Board's complaint in charging a failure to bargain did not sufficiently inform respondent of the contention that it had failed to bargain in good faith. This is the case both because respondent has sought no review of the judgment below and because it sufficiently appears from the record that in the

course of the hearings before the Board respondent was fully advised of the nature of the Board's contention.

But it is the Board which has brought the judgment below here for review and on it rests the burden of showing in what respects the judgment is erroneous. Cf. *Federal Trade Comm'n* v. *Beech-Nut Co.*, 257 U. S. 441. To sustain that burden the Board insists that all the provisions of its order were lawfully made and that it is entitled to have the order enforced in its entirety. Section 10 (c) of the Act provides that if the Board "upon all the testimony taken" "shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action . . . as will effectuate the policies of this Act." The Board, having found in this case that respondent had refused to bargain, that part of its order directing respondent to "cease and desist from refusing to bargain collectively" with the Guild, was in exact compliance with the statute and should have been left undisturbed by the judgment below.

A question of a different nature is presented by paragraph 1 (b) of the order, by which the Board, on the basis of respondent's action in refusing to bargain and its statements interfering with the bargaining negotiations, has directed respondent not to violate "in any manner" the duties imposed on the employer by the statute. Petitioner argues that since respondent's refusal to bargain, which is a violation of § 8 (5), is also a violation of § 8 (1), which in terms incorporates by reference all the rights enumerated in § 7, the Board is not only free to restrain violations like those which respondent has committed, but any other unfair labor

practices of any kind which likewise infringe any of the rights enumerated in § 7, however unrelated those practices may be to the acts of respondent which alone emerged in course of the hearing and which the Board has found.

But we think it does not follow that, because the act of respondent which the Board has found to be an unfair labor practice defined by § 8(5) is also a technical violation of § 8(1), the Board, in the circumstances of this case, is justified in making a blanket order restraining the employer from committing any act in violation of the statute, however unrelated it may be to those charged and found, or that courts are required for the indefinite future to give effect in contempt proceedings to an order of such breadth.

We cannot find such authority or requirement in the carefully chosen language of § 10(c), which directs the Board to state its findings of fact showing the unfair labor practice charged and to order the person accused to "cease and desist from such unfair labor practice," or in § 10(e) of the Act which authorizes the court on application of the Board to enter a "decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board." It is obvious that the order of the Board, which, when judicially confirmed, the courts may be called on to enforce by contempt proceedings, must, like the injunction order of a court, state with reasonable specificity the acts which the respondent is to do or refrain from doing. It would seem equally clear that the authority conferred on the Board to restrain the practice which it has found the employer to have committed is not an authority to restrain generally all other unlawful practices which it has neither found to have been pursued nor persuasively to be related to the proven unlawful conduct.

Congress has itself afforded a guide pointing to the appropriate limits of the order which the Board is to make in restraining unfair labor practices. By its definition and classification of unfair labor practices in the statute it has shown that they are not always so similar or related that the commission of one necessarily merits or rightly admits of an order restraining all. Here the whole controversy between respondent and the Guild was with respect to the Guild's request to bargain and respondent's attempt to influence the negotiations and its ultimate refusal to enter into an agreement from all of which the Board inferred the refusal to bargain in good faith. In all other respects respondent has consistently left the Guild and its activities undisturbed. The Board made no finding and there is nothing in the record to suggest that the failure of the bargaining negotiations and all that attended them gave any indication that in the future respondent would engage in all or any of the numerous other unfair labor practices defined by the Act.

Refusal to bargain, defined as an unfair labor practice by § 8 (5), may be, as we think it was here, wholly unrelated to the domination of a labor union or the interference with its formation or administration or financial or other support to it, all of which are defined as unfair labor practices by § 8 (2). Refusal to bargain may be, as we think it was here, wholly unrelated to "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization," all of which are unfair labor practices as defined by § 8 (3). Here the Board made no finding based either on the specific circumstances disclosed by the record or on its own expert judgment of their relation to the policy embodied in § 7, or as to any relationship or probable relationship of respondent's refusal to bargain and the other types of unfair practices some of which are enumer-

ated in § 8. Yet, if the contention which it makes is to be sustained, subsequent violations of § 8 (2) and (3), which are also violations of § 8 (1), may be the subject of a contempt order merely because respondent by the refusal to bargain has violated § 8 (5) which is similarly a violation of § 8 (1).

In view of the authority given to the Board by § 10 (c), carefully restricted to the restraint of such unfair labor practices as the Board has found the employer to have committed, and of the broad language of § 10 (e) authorizing the courts to modify the order of the Board wholly or in part, we can hardly suppose that Congress intended that the Board should make or the court should enforce orders which could not appropriately be made in judicial proceedings. This is the more so because § 10 (a), which authorizes the Board "as hereinafter provided, to prevent any person from engaging in any unfair labor practice," specifically directs that "This power shall be exclusive, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise." In the light of these provisions we think that Congress did not contemplate that the courts should, by contempt proceedings, try alleged violations of the National Labor Relations Act not in controversy and not found by the Board and which are not similar or fairly related to the unfair labor practice which the Board has found.

A federal court has broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future, unless enjoined, may fairly be anticipated from the defendant's conduct in the past. But the mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute and thus subject the defendant to contempt proceedings if

he shall at any time in the future commit some new violation unlike and unrelated to that with which he was originally charged. This Court will strike from an injunction decree restraints upon the commission of unlawful acts which are thus dissociated from those which a defendant has committed. *Swift & Co.* v. *United States,* 196 U. S. 375; *New York, N. H. & H. R. Co.* v. *Interstate Commerce Comm'n,* 200 U. S. 361, 404, and see under the National Labor Relations Act, *National Labor Relations Board* v. *Swift & Co.,* 108 F. 2d 988.

It is a salutary principle that when one has been found to have committed acts in violation of a law he may be restrained from committing other related unlawful acts. But we think that, without sacrifice of that principle, the National Labor Relations Act does not contemplate that an employer who has unlawfully refused to bargain with his employees shall for the indefinite future, conduct his labor relations at the peril of a summons for contempt on the Board's allegation, for example, that he has discriminated against a labor union in the discharge of an employee, or because his supervisory employees have advised other employees not to join a union. See e. g., *H. J. Heinz Co.* v. *National Labor Relations Board,* 311 U. S. 514.

Having found the acts which constitute the unfair labor practice the Board is free to restrain the practice and other like or related unlawful acts. But as the Court has held in the case of the Federal Trade Commission, see *Federal Trade Comm'n* v. *Beech-Nut Co., supra,* 455, an order not so related should be appropriately restricted on review. The breadth of the order, like the injunction of a court, must depend upon the circumstances of each case, the purpose being to prevent violations, the threat of which in the future is indicated because of their similarity or relation to those unlawful acts which the Board has found to have been committed

by the employer in the past. See *United States* v. *Trans-Missouri Freight Assn.*, 166 U. S. 290, 308, 309; *Standard Oil Co.* v. *United States*, 221 U. S. 1, 77; *Texas & New Orleans R. Co.* v. *Brotherhood of Railway Clerks*, 281 U. S. 548; *Local 167* v. *United States*, 291 U. S. 293; *Virginian Ry. Co.* v. *System Federation No. 40*, 300 U. S. 515, 541, 543, 544. We hold only that the National Labor Relations Act does not give the Board an authority, which courts cannot rightly exercise, to enjoin violations of all the provisions of the statute merely because the violation of one has been found. To justify an order restraining other violations it must appear that they bear some resemblance to that which the employer has committed or that danger of their commission in the future is to be anticipated from the course of his conduct in the past. That justification is lacking here. To require it is no more onerous or embarrassing to the Board than to a court. And since we are in a field where subtleties of conduct may play no small part, it is appropriate to add that an order of the Board, like the injunction of a court, is not to be evaded by indirections or formal observances which in fact defy it. After an order to bargain collectively in good faith, for example, discriminatory discharge of union members may so affect the bargaining process as to establish a violation of the order.

The Board places strong reliance on *National Labor Relations Board* v. *Fansteel Metallurgical Corp.*, 306 U. S. 240, and on *Texas & New Orleans R. Co.* v. *Brotherhood of Railway Clerks, supra,* 555, 567, 568, 571, and *Virginian Ry. Co.* v. *System Federation No. 40, supra,* 543, 544. In those cases the cease and desist order and the injunctions were substantially like paragraph 1(b) of the Board's order in the present case. But in them the unfair labor practices did not appear to be isolated acts in violation of the right of self-organization, like the refusal

to bargain here, but the record disclosed persistent attempts by varying methods to interfere with the right of self-organization in circumstances from which the Board or the court found or could have found the threat of continuing and varying efforts to attain the same end in the future.

An appropriate order in the circumstances of the present case would go no further than to restrain respondent from any refusal to bargain and from any other acts in any manner interfering with the Guild's efforts to negotiate. So far as respondent's past conduct may be thought to have had any effect on the rights guaranteed by § 7, such consequences would be effectively prevented by the prohibition of such an order without drawing it so broadly as to forbid all other unrelated unfair labor practices.

Only a word need be said of that part of the Board's order requiring the posting of notices. We have often held that the posting of notices advising the employees of the Board's order and announcing the readiness of the employer to obey it is within the authority conferred on the Board by § 10(c) of the Act "to take such affirmative action . . . as will effectuate the policies" of the Act. See *National Labor Relations Board* v. *Pennsylvania Greyhound Lines,* 303 U. S. 261, 268; *H. J. Heinz Co.* v. *National Labor Relations Board, supra.*

But respondent argues that the authority of the Board does not extend to the requirement, such as was made in this case, that the employer confess violation of the Act by a published announcement that he will "cease and desist" from violating it. See, *National Labor Relations Board* v. *Abell Co.,* 97 F. 2d 951; *Burlington Co.* v. *National Labor Relations Board,* 104 F. 2d 736; *Swift & Co.* v. *National Labor Relations Board,* 106 F. 2d 87; *Art Metals Construction Co.* v. *National Labor Relations Board,* 110 F. 2d 148, 151, 152; *Hartsell Mills Co.* v. *Na-*

*tional Labor Relations Board,* 111 F. 2d 291, 293. Since the Board has changed its practice and now provides in all orders that the employers' notices shall state "that he will not engage in the conduct from which he is ordered to cease and desist" it consents that the present order be modified accordingly.

What we have said requires a reversal of the judgment below and the reëstablishment of the Board's order with the following exceptions:

Paragraph 1 (b) of the order will be modified so as to require only that respondent shall cease and desist from "In any manner interfering with the efforts of the Guild to bargain collectively with Express Publishing Company, San Antonio, Texas."

Paragraph 2 (b) of the order will be modified by striking from it the words "will cease and desist as aforesaid", and substituting for them the words "will not engage in the conduct from which it is ordered to cease and desist as aforesaid."

*Reversed.*

MR. JUSTICE DOUGLAS:

I think the cease and desist order should be enforced in full.

Respondent did not object in its answer to the Board's petition before the Circuit Court of Appeals to that portion of the Board's order which the Court now modifies. So far as the briefs disclose it did not make any such objection in the Circuit Court of Appeals. Nor did respondent question the propriety of that provision of the order or challenge the power of the Board to make it either in its brief or in its oral argument here. Any controversy on that issue before this Court is therefore not attributable to respondent. For on the record before us

it must be assumed that respondent wholly acquiesces in that phase of the Board's action. In that posture of the case, it is plain this Court will not customarily raise *sua sponte* objections which respondent did not choose to make. We are, of course, asked to enforce an order of the Board. And I suppose we might refuse to enforce provisions of such an order which are patently *ultra vires*, even though the other party raises no objection but acquiesces in them. But, in my view, this provision of the order is not beyond the power of the Board.

The order as modified restrains respondent from interfering in any manner "with the efforts of the Guild to bargain collectively" with it. But respondent is not restrained from interfering with the employees in the exercise of their rights (a) to self-organization, (b) to form, join, or assist labor organizations, or (c) to engage in concerted activities for the purposes of collective bargaining or other mutual aid and protection. These deletions represent the loss of substantial sanctions—sanctions which the expert administrative agency may well have concluded are basic and essential for protection of the right which this very union has won.

Take the case where an employer is playing ducks and drakes with the National Labor Relations Act. He pays mere lip service to the requirements of the Act while intent on blocking in his plant any effective union action. If that is a faithful representation of his attitude, the mandate of the Act might be wholly frustrated or its enforcement needlessly delayed were the Board merely to order him to cease and desist from interfering "with the efforts" of the union "to bargain collectively." That, without more, might well be wholly ineffective, or so the Board in its discretion might conclude. In fact, it might even be an open invitation to an employer intent on evasion of the spirit and letter of the Act to resort to devious routes to the same end. Employees are dropped—per-

haps the leaders of the union; labor spies are employed; a company union is sponsored and financed; new employees are selected who promise not to join the outside union. The purpose is to thwart any effective action by that union. Such obstructive tactics could go on apace and yet no "efforts" of the union "to bargain collectively" need be denied. The employer could continue the so-called negotiations with the union, perhaps reach at least a tentative agreement with it, and yet in a myriad of ways undermine it if the breadth of the cease and desist order were delimited.

Perhaps this is to conjure up remote and hypothetical situations. Perhaps that is not this case.[1] But I think it is important to remind that we do not sit as an administrative agency with discretion to adjust the remedies accorded by the Act to what we think are the needs of particular cases, with power to write or rewrite administrative orders in light of what we think are the exigencies of specific situations, with the duty to pass on the wisdom of administrative policies. Congress has invested the Board, not us, with discretion to choose and select the remedies necessary or appropriate for the evil at hand.

The Board concluded (so we must presume) that its order directing respondent to bargain collectively with the Guild need be buttressed by broad protective provisions good against any and all methods of evasion. Formal recitals could hardly make that plainer than it is.[2] And clearly those provisions are no broader than

---

[1] It should, however, be noted that the Board concluded that "the respondent had no intention of negotiating in good faith with the Guild nor of entering into a collective bargaining agreement with it." And the Circuit Court of Appeals observed, ". . . we think there was evidence to support the finding of the Board that respondent had determined in advance never to agree to anything."

[2] In this connection it should be observed that the Board found that respondent had "interfered with, restrained, and coerced its employees in the exercise of the rights guaranteed in Section 7 of the Act" by reading to them a statement which "presented a distorted con-

the wide reaches of the controversy disclosed in this record.

Whether the remedy chosen by the Board was reasonably necessary in this case is not for us to determine. Nor is it for us to say what language is adequate to safeguard the labor rights which are in issue. To cut down the language of this order not only substitutes our judgment for that of the Board; it will also result in the creation of a host of uncertainties. The original order makes clear that any attempted evasion, no matter how devious, is banned. As modified the order clearly subtracts from those sanctions. But the precise extent of its dilution remains uncertain. The Board may, of course, in case of future violations institute new administrative proceedings. Yet the method here chosen for settlement of this labor controversy does not promise peace. It invites a prolongation of the dispute which should be deemed to have been settled, with the employer's acquiescence, once and for all. That practical aspect of the matter is of great importance on the merits; and it also emphasizes the seriousness of our intrusion into the administrative domain. See Note (1940) 53 Harv. L. Rev. 472.

MR. JUSTICE BLACK and MR. JUSTICE REED join in this opinion.

cept" of the employees' rights under the Act. The Circuit Court of Appeals set aside that finding. While the Board did not raise that issue in its petition for certiorari, that episode is nevertheless relevant to the scope of the cease and desist order. If it be assumed, as does the majority, that such a broad order must be founded at least on some evidence that other related unlawful acts "may fairly be anticipated from the defendant's conduct in the past," that episode is of significance. For though it might not of itself support an additional finding of a separate violation of § 8, it certainly is some evidence for the exercise of the Board's expert judgment that the refusal to bargain did not have an improbable relationship to other likely obstructive tactics of a related order.