## NATIONAL LABOR RELATIONS BOARD v. CONTINENTAL OIL CO.

### No. 2242.

Circuit Court of Appeals, Tenth Circuit.

June 23, 1941.

Bernard R. Bralove, of Washington, D. C. (Robert B. Watts, Laurence A. Knapp, Ernest A. Gross, Morris P. Glushien, Owsley Vose, and Malcolm S. Mason, all of Washington, D. C., on the brief), for petitioner.

William H. Zwick, of Ponca City, Okl., for respondent.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

The National Labor Relations Board seeks enforcement of an order directing respondent, Continental Oil Company, a corporation, to cease and desist from the unfair labor practices of which the Board had found it guilty, and to take such affirmative action as was ordered by the Board. The order directed respondent to:

1. Cease and desist from:

"(a) Dominating or interfering with the administration of Continental Employes Union of Ponca City Area, or with the formation or administration of any other labor organization of its employees, and from contributing financial and other support to the Continental Employes Union of Ponca City Area, or any other labor organization of its employees;

"(b) Giving effect to any check-off or other arrangements or agreements which it has made with the Continental Employes Union of Ponca City Area;

"(c) In any other manner interfering with, restraining, or coercing its employes in the exercise of their rights to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, as guaranteed in Section 7 of the Act.

"2. Take the following affirmative action which the Board finds will effectuate the policies of the Act:

"(a) Withdraw all recognition from the Continental Employes Union of Ponca City Area as a representative of any of its employees for the purpose of dealing with the respondent concerning grievances, labor disputes, rates of pay, wages, hours of employment, or other conditions of employment, and completely disestablish the Continental Employes Union of Ponca City Area as such representative;

"(b) Reimburse the employees who were members of the Continental Employes Union of Ponca City Area for the dues which have been deducted from said employees' wages on behalf of said Continental Union;

"(c) Post immediately in conspicuous places in each department of its plant, and maintain for a period of at least sixty (60) consecutive days, notices to its employees stating that the respondent will cease and desist in the manner set forth in 1(a), (b), and (c) and that it will take the affirmative action set forth in 2(a) and (b) of this Order;

"(d) Notify the Regional Director for the Sixteenth Region in writing, within ten (10) days from the date of this Order, what steps the respondent has taken to comply therewith.

"And It Is Further Ordered, that the complaint, in so far as it alleges that the respondent has engaged in unfair labor practices within the meaning of Section 8(3) of the Act, be, and it hereby is, dismissed."

The validity of the order is challenged by respondent. Respondent maintains and operates oil and gas refineries in many states. This proceeding involves its plant at Ponca City, Oklahoma. The evidence introduced at the hearing tended to establish these facts: In 1933 respondent organized the Management-Employee Cooperative Council as a medium for dealing with its employees. Respondent and the employees had equal representation on the council. Decisions of the council were appealable only to the company's own officials. All costs and expenses of the council were borne by respondent.

The council was maintained until shortly after the decision by the Supreme Court sustaining the validity of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. Five days thereafter, Walter Miller, vice president of the company, issued and posted the following statement on the bulletin board:

"To: Employees Interested in and Members of the Ponca City Management Employee Cooperative Council.

"I have been asked whether our present Council Plan conforms to the National Labor Relations Act (generally known as the Wagner Act).

"I have made a study of the Act and find some revisions in the Council Plan are necessary, but in my opinion revisions can be made in the existing plan which will bring it completely within the scope of all the requirements of the Act, and enable the continuance of collective bargaining substantially as has been the case in the past few years.

"Walter Miller,
"Vice-President."

About the same time, Ralph H. Townsend, a former council representative, consulted with L. S. Van Nest, personnel supervisor of respondent, with respect to what the employees were "going to do about a bargaining agency." Van Nest called his attention to an article in a trade magazine describing the establishment of the "Security League" by the employees of the Humble Oil Company. Townsend thereupon drafted an anti-union petition. A short time thereafter he presided over a meeting of some twenty employees in the conference room of respondent's plant. He announced that the decision of the Supreme Court had outlawed the council but that "they made it compulsory for us to have some kind of a bargaining agency." Van Nest attended this meeting at the request of Townsend and brought with him the magazine article which had caused Townsend to draft the anti-union petition. Van Nest discussed the Wagner Act, and raised a question both as to the propriety of his presence at the meeting and as to the legality of holding the meeting in the plant. The magazine article was read and a discussion ensued with respect to the petition, in which Van Nest took part. After some revision, the employees signed the petition and copies of it were placed in the open working desks of the head operators in each department. The petition as revised expressed the employees' desire to maintain relations with the company as they had in the past, and declared their determination not to be influenced by any outside organization.

Thereafter, on April 18, respondent called a meeting of the council, at which H. G. Osborn, plant manager, announced that the

management was withdrawing its representatives from any further participation in the council and that respondent would no longer recognize it as a bargaining agency. He stated that respondent's decision in this matter was prompted by the decision of the Supreme Court. He further stated that "The council is yours from now on. It is your baby and in your laps." He, together with the management representatives, thereupon withdrew from the meeting. The employee representatives, however, requested Osborn to remain in the building within call so that they might ask him questions, and he did so. After a three or four hour conference, the employee representatives decided to hold a general meeting the next day at the American Legion Hut near the plant, and notified the employees accordingly. Van Nest opened that meeting with a statement of the position of the company respecting the council. The meeting was poorly attended and a further meeting was called for April 21. Notices were posted throughout the plant and Van Nest arranged for the use of the company's machine shop for the meeting and had the division superintendent let all the men off from work so that they could attend the meeting. He opened the meeting by stating that although the council would have to be done away with, it would continue to function "until we get something else." He stated that the act "made it compulsory for us to have some kind of a collective bargaining agency," and that a plan had been worked out. One of the employees outlined a plan for a new independent union. Motions were adopted that the elected representatives of the old cooperative council continue in their work in that capacity until the by-laws of the new union were set up and that such representatives draft a new constitution with the assistance of two men appointed by them from each department of the plant. An employee who moved that the additional two men be elected by the employees instead of appointed by the council representatives was promptly ruled out of order by Van Nest. The drafting committee met in the plant conference room on April 22, 23 and 24, during working hours, and were paid full salaries for the time spent.

This committee prepared the constitution and by-laws creating the Continental Union, herein called Continental. When the constitution and by-laws were drafted,

they were first submitted to respondent's vice president, Miller, and one of its legal advisors, and at the suggestion of the latter, their arrangement was revised. From April 30 to May 3 an election was conducted among respondent's employees upon the question of designating Continental as the bargaining representative. The employees were given an opportunity to vote yes or no upon the question of whether they desired to select Continental as bargaining representative. The ballots were mimeographed by respondent and the election tellers were designated by the old council representatives. The employees voted in favor of Continental. On May 7, the old council representatives requested Miller to recognize Continental, and he did so within an hour. On the same day respondent posted notices on its bulletin boards announcing such recognition and stating that, "This takes the place of the Management-Employees Cooperative Council which has functioned since 1933, but which can no longer be kept up because of certain provisions in the Act." Respondent stated that it felt that the objectives of the council would be continued in Continental.

From this the Board found and concluded that respondent had dominated and interfered with the formation and administration of Continental; that it had contributed financial and other support to it and had thereby interfered with, restrained and coerced its employees in the exercise of their rights guaranteed by Section 7 of the Act.

Respondent contends that when it withdrew recognition from the Management-Employee Cooperative Council and announced that the question of employee organization was for the employees to determine, it thereby removed any coercive effect which its past conduct may have had on its employees and that thereafter it in no wise interfered with the formation of the new organization.

It is only if the break and cleavage between the old and the new organization were complete and respondent's withdrawal from domination or interference with the right of its employees to organize was sincere and not merely colorable that this position may be maintained. We have held that employees may join an independent union so long as it meets the standards of independence required by the act; that we would carefully scrutinize the acts lead-

ing to the formation of an association where it sprang from and had its inception in a plan admittedly not in conformity with the act; that we would carefully scrutinize any contribution made by the company to the new organization. Magnolia Petroleum Co. v. National Labor Relations Board, 10 Cir., 115 F.2d 1007. Respondent could not with its right hand openly withdraw the proscribed plan and at the same time covertly with its left hand advance a plan meeting its approval. The break between the old and the new must be complete. The slate must be wiped clean. Continental Oil Co. v. National Labor Relations Board, 10 Cir., 113 F.2d 473; Republic Steel Corp. v. National Labor Relations Board, 3 Cir., 107 F.2d 472.

There was never a complete abandonment of the old organization. The officers and members of the old council initiated and pushed the new organization. The constitutionality of the act was established April 12, 1937. On April 18, 1937, a meeting of the old council was called by respondent, at which it announced the withdrawal of its representatives from participation in the council. Osborn, the manager, and respondent's representatives thereupon withdrew and the employee representatives of the old council deliberated for three or four hours regarding a new organization. Osborn, however, remained within call so that he could be consulted, if the employee representatives wanted his advice. It was finally determined to hold a general meeting the next day. This meeting was poorly attended and another meeting was called for April 21. Van Nest presided at this meeting and announced that while the old council would have to be done away with, it would continue "until we get something else." One of the employees then outlined a plan for an independent union and suggested that the representatives of the old council continue in their work until the constitution and by-laws of the new union were set up, and that the council representatives, together with two members selected by themselves from each representative district, prepare the constitution and by-laws. When another employee moved that the two additional members be selected by the employees themselves, he was declared out of order. The council members took complete charge of the new organization; they drew the constitution and by-laws which they first submitted to the vice president, and to a legal representative

of respondent for their suggestions and approval. At the suggestion of the legal representative, some changes were made. In many respects the provisions of the constitution and by-laws were the same as under the old organization. The formation of the new organization was completely under the domination and control of the representatives of the old council. At no time did they consult with the employees regarding any provision of the constitution or the by-laws. They did, however, consult with respondent concerning these matters. At no time were the employees given an opportunity to pass upon any of the provisions of the constitution or by-laws. It was only after they had been submitted to respondent and apparently approved by it that the employees were given a right to vote yes or no on whether they chose Continental as their bargaining representative.

The Board further found that respondent had violated the provisions of the act by dominating and interfering with the formation of Continental. Immediately upon the act being held constitutional, respondent's vice president posted a notice on the bulletin board informing the employees that he had studied the act and had concluded that the existing plan could be revised so as to bring it within the act, and that they could continue collective bargaining substantially as before. Immediately thereafter the employee members of the old council undertook the formation of a new union. Van Nest took a very active part in the proceedings. He presided at all the organization meetings. He declared out of order the motion that would have given the employees the right to select the two added members from each representative district to aid the committee in forming the constitution and by-laws. At the meeting he stated the position of respondent. He arranged for the use of respondent's machine shop for the meeting and arranged with the superintendent to let the men off from work so they could attend the meeting.

 Respondent, however, contends that it is not chargeable with Van Nest's actions because he is not a managing officer and has no power to discharge employees. It is admitted that he had charge of personnel relation matters in respondent's plant; that it was his duty to interview applicants for employment and make recommendations relative to their employment or to the transfer of employees from

one department to another. He was not employed by the hour, but drew a monthly salary of approximately $300. Whether Van Nest had power to hire or fire employees is not the gauge by which to determine respondent's liability for his conduct. The test is whether his relation to respondent was such that the employees had just cause to believe that he did represent respondent and that he translated to them the wishes and desires of the management. International Ass'n, etc. v. National Labor Relations Board, 311 U.S. 72, 80, 61 S.Ct. 83, 85 L.Ed. 50; National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 61 S.Ct. 358, 85 L.Ed. 368. Such was his position with respondent. His position, coupled with his activity and conduct in the proceedings, was such as would cause the employees to believe that he represented and spoke the wishes of the management. Furthermore, respondent violated the provisions of the act by contributing financial and other aid and support to those organizing Continental. It gave permission for the use of its machine shop for organization meetings, allowed notices to be posted throughout the plant, permitted employees to attend organization meetings without loss of pay, granted permission to council members to be away from their work for several days without loss of pay while they were drafting the constitution and by-laws, allowed the election to be conducted at the plant, and printed the ballots used in the election. The Board was warranted in concluding and finding that Continental was but a continuation of the company dominated council and that respondent had contributed financial and other aid in the organization of Continental, thus violating the clear provisions of the act.

■■ Exception is taken to Paragraph 2(b) of the order, requiring respondent to reimburse the members of Continental for the dues deducted by respondent from their wages and paid to Continental. The functions of the Board are to secure to employees their rights under the act and to remove the effects of any unlawful conduct by an employer. The act is essentially remedial. The Board may take such affirmative action as will insure to employees their rights guaranteed by the act. Republic Steel Corporation v. Labor Board, 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. 6; Consolidated Edison Co. v. Labor Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126. That part of the order requiring refund of payments made to Continental under the check-off system cannot be sustained under the circumstances as they appear in this proceeding. The Board found that respondent deducted the amount of dues in Continental from the wages of employees who were members thereof in such cases where the employee member of the union requested that it be done. To now require respondent to repay what was deducted by request of the employees would be penal and not remedial. National Labor Relations Board v. J. Greenebaum Tanning Co., 7 Cir., 110 F.2d 984; Western Union Telegraph Co. v. National Labor Relations Board, 2 Cir., 113 F.2d 992; National Labor Relations Board v. West Kentucky Coal Co., 6 Cir., 116 F.2d 816. It would in no wise tend to remove the effect of the wrongful conduct of respondent resulting from its support of Continental. That is accomplished wholly and completely by requiring disestablishment of it as the bargaining representative of the employees and directing respondent to cease recognition of it as such.

Paragraph 1(a) of the order directs respondent to cease and desist from: "Dominating or interfering with the administration of Continental Employes Union of Ponca City Area, or with the formation or administration of any other labor organization of its employees, and from contributing financial and other support to the Continental Employes Union of Ponca City Area, or any other labor organization of its employees."

Subsection (c) orders respondent to cease and desist from: "In any other manner interfering with, restraining, or coercing its employees in the exercise of their rights to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection, as guaranteed in Section 7 of the Act."

■■ Where it has been found that one, by specific violation, has violated a right guaranteed to the employees, the Board may not only enjoin the specific act of violation charged and found to exist, but it may generally enjoin the offending party from committing any related unlawful acts resulting in the violation of such right. National Labor Relations Board v. Express Co., 61 S.Ct. 693, 85 L.Ed. —,

126

decided by the Supreme Court March 3, 1941. Here the charge was that respondent violated that part of the act which guaranteed to the employees the right to self-organization. The specific means employed by respondent in violating this right were its domination and interference with the formation of Continental and by giving aid and support to it. The Board had power not only to enjoin the specific violation of this right, but it could generally enjoin respondent from in any other manner interfering with the rights of its employees to self-organization. But the order went further, and directed respondent to cease and desist from interfering with the right to bargain collectively through representatives of their own choosing and from engaging in concerted activities for the purpose of collective bargaining or other mutual aid or protection, as guaranteed in Section 7 of the Act. The complaint did not charge respondent with interfering with the right to bargain collectively or with interfering with the right to engage in concerted activities for the purpose of collective bargaining, nor did it charge them with interfering with the right of mutual aid or protection, as guaranteed in Section 7 of the Act. The Board could not issue a sweeping order general in terms, enjoining respondent from violating the act generally. This is prohibited by the express mandate of the Supreme Court in National Labor Relations Board v. Express Publishing Co., supra. See, also, Singer Mfg. Co. v. National Labor Relations Board, 7 Cir., 119 F.2d 131.

We conclude that that portion of Paragraph 1(c) of the order beginning with the words, " * * * to bargain collectively * * * " and continuing to the end of the paragraph, should be stricken from the order. Paragraph 1(a) should be made to read substantially as follows:

"1. Cease and desist from:

"(a) Dominating or interfering with the administration of Continental Employees Union of Ponca City Area, or with the formation or administration of any other labor organization of its employees, and from contributing financial and other support to the Continental Employees Union of Ponca City Area or any other labor organization of its employees, or in any other manner interfering with, restraining or coercing its employees in the exercise of their rights to self-organization, to

form, join or assist labor organizations of their own choosing."

. When so revised, Paragraph 1(c) will become unnecessary. Paragraph 2(b) should be stricken from the order.

As so modified, the order of the Board is affirmed and will be enforced.