**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**UNITED WIRE AND SUPPLY CORPORATION, Respondent.**

**No. 6023.**

United States Court of Appeals
First Circuit.

Dec. 31, 1962.

Joseph C. Thackery, Washington, D. C., Atty., with whom Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Melvin Pollack, Atty., were on brief, for petitioner.

John Gorham, Providence, R. I., with whom Sayles Gorham and Gorham & Gorham, Providence, R. I., were on brief, for respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

Acting upon a complaint based upon a charge filed by United Steelworkers of America AFL–CIO, a trial examiner for the National Labor Relations Board, following routine procedures under § 10(b) of the Act, filed an intermediate report in which, after discussing the evidence at length, he came to the conclusion that the respondent had engaged and was engaging in unfair labor practices within the meaning of § 8(a) (1) of the Act by interfering with, restraining and coercing its employees in the exercise of their rights under § 7 of the Act. Specifically the trial examiner found that the respondent through its supervisory personnel had kept certain employees under sur-

veillance for their union activities and had created and meant to create the "impression" among its employees that their union activities were under surveillance, that it had prevented its employees from engaging in union solicitation or discussion on its premises during their free or non-working time, i. e. during lunch time, that it had interrogated employees as to their union activities and threatened certain of them with reprisals therefor and that it had limited or discontinued the normal duties of certain employees because of their union activities or sympathies.[1] The Board adopted the above findings of the trial examiner, affirmed his rulings, and entered the order which it asks this court to enforce directing respondent to cease and desist from the unfair labor practices found and to post a notice to that effect in its plant. The only part of the order which invites our consideration is the part which requires the respondent to cease and desist from creating the "impression" of keeping its employees' union activities under surveillance.

Aside from its challenge to the portion of the Board's order referred to above, the respondent's contentions are that the Board's findings are not supported by substantial evidence in the record considered as a whole and that the Board erred in failing specifically to dismiss an allegation in General Counsel's complaint which the trial examiner found was not supported by the evidence.

It is true, as the respondent contends and the trial examiner conceded, that all of the respondent's supervisory personnel from top to bottom had risen from the ranks and had worked for years in close association with rank and file employees so that naturally there was a close relationship between all ranks and a natural

tendency to a freer interchange of views, news, information and ideas than would exist in a plant where there was a more sharp and distinct line of separation between supervisory and production employees. And it is also true that the respondent had a long standing practice of giving complete and detailed information to its production employees with respect to company matters which might affect their interest and that no such employee had ever been discharged for union activities. Indeed, it appears that for years the respondent company had functioned internally on a friendly and informal basis, that sharp distinctions in rank had never been drawn, that some five or six years before the events under consideration the Union had lost a Board election by a substantial margin and that only some ten or a dozen employees out of about 600 were active advocates of unionization when the acts charged by the Union occurred. Viewed against this background the acts found by the Board to have constituted unfair labor practices might well seem trivial or ambiguous. However, the respondent's chief executive, in numerous bulletins distributed to employees and in notices posted on the plant marquee and on its bulletin board, expressed strong anti-union sentiment and heaped opprobrium upon local officials of the Union, calling them "outside agitators" and upon pro-union employees, calling them "inside agitators," often in capital letters.[2] These communications were not found to violate the Act in and of themselves. But we think the trial examiner rightly found that they had the effect of "considerably" dampening the "spirit of easy 'give and take' " otherwise existing between supervisory personnel and rank and file employees.

1. The trial examiner also found that the respondent had demoted a supervisory employee because of his failure or refusal to follow orders and engage in unfair labor practices with respect to an employee. The Board, however, did not agree with this finding so it is not before us.

2. Typically the bulletins to employees concluded with a sentence like this: "Re-

member, there is nothing these OUTSIDERS can do for us that we can't do much better by working cooperatively, harmoniously, and peacefully together; and it won't cost you $5.00 PER MONTH OR MORE FOR DUES; and you won't lose your independence and freedom either."

■ No useful purpose would be served by analyzing and discussing the evidence supporting each finding of an unfair labor practice in detail. We think it enough to say that a careful reading of the record as a whole against the background of plant informality but union hostility discloses that each finding is supported by substantial evidence.

■ We do not see how the respondent is prejudiced by the Board's failure specifically to dismiss a charge of an unfair labor practice in the complaint which the trial examiner found was not borne out by the evidence. It is adequately protected by the Board's adoption generally of the trial examiner's findings except as to his finding with respect to the discharge of the supervisory employee referred to in footnote 1, supra. The respondent's contention that it is entitled to the specific dismissal of another charge found not supported by the evidence is only formalistic.

We turn now to the order of the Board insofar as it directs the respondent to cease and desist from creating the "impression" of keeping its employees' union activities under surveillance.

The word "impression" as used in the Board's order is defined in Webster's New International Dictionary, Second Edition, as: "An indistinct or indefinite notion, remembrance, belief, or opinion; as, an *impression* of familiarity with a face." The applicable synonyms listed in Roget's Thesaurus of the English Language in Dictionary Form by Mawson (1936) are "opinion," "notion," "feeling." The content of the word is highly subjective, for its impact depends largely upon state of mind. Thus a simple routine act of management such as observing the operation of the plant or one of its departments to study its efficiency and the industry of employees might well give a highly sensitive, imaginative or suspicious employee the "impression" that he was under surveillance for possible union activity whereas in fact management was only performing a perfectly legitimate routine supervisory function.

■ It may well be as the Board asserts that the part of its order under consideration is intended only to put an end to statements made in respondent's bulletins and by its supervisor's claiming knowledge of union meetings, of what transpired at them and of the participants therein, which we may concede tend to give an "impression" of surveillance. But the literal language of the order is broader than the Board's construction of it and this court in a proceeding for contempt " * * * would not be bound to look upon the Board's construction as its own." J. I. Case Co. v. N. L. R. B., 321 U.S. 332, 341, 64 S.Ct. 576, 582, 88 L.Ed. 762 (1944). As the Court pointed out in the case cited: "Questions of construction had better be ironed out before enforcement orders issue than upon contempt proceedings. A party is entitled to a definition as exact as the circumstances permit of the acts which he can perform only on pain of contempt of court. Nor should he be ordered to desist from more on the theory that he may violate the literal language and then defend by resort to the Board's construction of it. Courts' orders are not to be trifled with, nor should they invite litigation as to their meaning."

■ It does not follow from this quotation that the phrases in the Board's order in which the word "impression" appears must be deleted altogether. Compare N. L. R. B. v. Walton Mfg. Co., 286 F.2d 16, 21 (C.A.5, 1961). All that we think is required is that the Board in its order set out the conduct which it asserts creates an "impression" of surveillance and forbid those acts and like or related conduct. See N. L. R. B. v. Express Publishing Co., 312 U.S. 426, 436, 61 S.Ct. 693, 85 L.Ed. 930 (1941).

We shall not undertake to redraft the Board's order ourselves lest perchance we misunderstand the Board in believing that the only conduct it intends to prohibit by its "impression" of surveillance clauses is that mentioned above. It may perhaps have other conduct in mind as well.

Therefore, as in N. L. R. B. v. Kelley & Picerne, Inc., 298 F.2d 895 (C.A.1, 1962), we shall retain our jurisdiction but return the case to the Board for revision of its order in accordance with the views expressed in this opinion. Upon the filing of a supplemental record we shall enter an appropriate decree.