TRUCK DRIVERS & HELPERS LOCAL UNION NO. 728, Affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL UNION NO. 55, Local Union No. 71, and General Drivers, Warehousemen and Helpers, Local Union No. 509, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Independent, Respondents.

Nos. 19353, 20757.

United States Court of Appeals
Fifth Circuit.

June 4, 1964.

694

Edwin Pearce, John S. Patton, Poole, Pearce & Hall, Atlanta, Ga., for petitioners.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Hans J. Lehmann, Atty., N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, Allison W. Brown, Jr., Attorney, N. L. R. B., for respondents.

Before TUTTLE, Chief Judge, and POPE * and BROWN, Circuit Judges.

TUTTLE, Chief Judge.

These cases, combined for oral argument, are considered jointly for the purpose of the opinion since they involve the same facts and the same order of the Labor Board. No. 19358 involves a petition by Local 728 to review and set aside an N.L.R.B. order, with a cross petition by the Board to enforce. No. 20757 is a petition by the Labor Board to enforce its order against Locals 71, 55 and 509. These Locals filed no exceptions to the Examiner's order and have made no response to the Board's petition. How-

ever, the Board has conditioned its request for summary enforcement of its order against these respondents on the enforcement by this Court of the Board's order against Local 728 in the other case.

The controversy which is present in both cases is an alleged conspiracy of the four Locals to engage in the illegal inducement of employees of secondary employers of Overnite Transportation Company in support of a concerted strike in four states.

The N.L.R.B. issued complaint No. 11–CC–16 at Winston-Salem, North Carolina, and produced evidence showing Locals 71, 55 and 509 had engaged in prohibited activity in Virginia, North and South Carolina. Orders were issued against all four unions, Local 728 being joined on the theory it had participated in a single joint enterprise. Local 728 petitioned for review before the District of Columbia Circuit, but the Board requested a remand and dismissed the case as to Local 728.

The Board also filed complaint No. 10–CC–426 against the four unions alleging violations in the State of Georgia, which is exclusively within the jurisdiction of Local 728. Illegal inducements were found to have occurred and Locals 71, 55 and 509 were ordered to cease and desist secondary boycotts against Overnite Transportation. Case No. 20757 seeks to enforce these orders. A "broad-order," however, was issued against Local 728, requiring it to cease and desist secondary boycotts against any person engaged in commerce. Case No. 19358 is Local 728's petition to review and the Board's cross-petition to enforce.

The three questions presented are:

1. Whether Locals were entitled to a dismissal of complaint 10–CC–426, the Board having charged similar violations in complaint 11–CC–16? (Nos. 19358 and 20757.)

2. Whether there was sufficient evidence to show a violation of § 8(b) (4) (A) and (B)? (Nos. 19358 and 20757.)

* Of the Ninth Circuit, sitting by designation.

3. Whether the order requiring Local 728 to refrain from certain acts as to "any other person engaged in commerce or in any industry affecting commerce" is erroneous because not based on evidence presented in this case, not referred to in the complaint filed, nor limited to parties to this cause? (No. 19358.)

In order that the answer to question 1 can be understood it is necessary to give a little procedural background, since the question arises by reason of the fact that two cases were filed by the Board, one in North Carolina and one in Georgia, which the Locals contend amounted to a splitting of the cause of action which gave rise to the Georgia case, complaint 10–CC–426, the case that produced the orders that are here complained of.

N.L.R.B. case No. 11–CC–16. The trial examiner found that in 1959 various Teamster Locals embarked on a campaign to organize Overnite, a freight trucking corporation in interstate commerce. Meetings were held in Atlanta and Charlotte to discuss courses of action in the campaigns. Picketing of Overnite terminals began on May 17, 1959, and also at the premises and terminals in Asheville and Charlotte of various customers and carriers doing business with Overnite (secondary employers) when Overnite trucks attempted to make deliveries. The pickets carried signs naming Locals 728, 71, 55 and 509 as those involved in the dispute. Also, there was evidence the secretary of Local 55 had sought to ascertain if there was any Overnite freight on the truck of a secondary employer and had suggested to the driver that he not handle any Overnite freight. The picketing of the premises of the secondary employer, when there was adequate opportunity to publicize the dispute by picketing of the primary employer, was found under the Washington Coca Cola doctrine, 107 N.L.R.B. 299, to be prima facie evidence of a purpose to induce employees of neutral employers. That picketing plus the suggestion to the secondary employer's truck driver was held to show a violation of 8(b) (4) (A) and (B) by

Locals 55, 71 and 509. Local 728, though it did not seek recognition outside of Georgia, was held to be responsible for the picketing since it engaged in joint meetings with the other Locals to plan courses of action and it offered no testimony that it had not authorized the use of its name on the picket signs. These findings were adopted by the Board which entered cease and desist orders limited to Overnite in the cases of Locals 55, 71 and 509. A broad cease and desist order was, however, found warranted against Local 728, barring it from any secondary boycott activity, because it "had demonstrated a proclivity to violate the act by secondary boycott activity against persons with whom it develops disputes." The basis for this was the fact that Local 728 had been found to have engaged in secondary boycotts in four cases, while three other cases involving the same problem had been settled by stipulation. Local 728 filed a petition to review in the D. C. Circuit, but the Board requested the case be remanded in light of its overruling of the Washington Coca Cola doctrine. On remand, the Board elected not to proceed with the case since Locals 55, 71 and 509 had complied with the orders and Local 728 was under an identical order in N. L. R. B. Case No. 10–CC–426.

N. L. R. B. Case No. 10–CC–426. The trial examiner originally recommended dismissal on the ground of multiplicity of suits. He noted that the case was identical to the one in No. 11–CC–16, which had been filed subsequent to the one facing him but which had gone to trial first. The N. L. R. B. reversed the Examiner on the grounds that the rules provided each Regional Director could file a charge, that the two cases involved separate and distinct activities, that the violations alleged were different in nature, the Carolina one consisting of picketing at secondary premises whereas the Georgia one involved oral appeals said to constitute unlawful inducement, that consolidation was a matter within the administrative discretion of the General Counsel, and that witnesses for the hearing in each case

resided near the place scheduled for hearing.

In his supplemental intermediate report the Examiner reaffirmed that the strike was a joint venture involving direct and secondary action in the Carolinas and Georgia by the Locals against Overnite. When the strike began Local 728's president informed the members that they should use their own judgment on whether to handle Overnite freight and notified, pursuant to a standard "hot cargo" clause, all companies in contract with Local 728 of the commencement of the strike. The Examiner then went on to list six incidents during the strike on which an 8(b) (4) (A) and (B) violation was found to have occurred:

1. A Local 728 employee of Atlanta-New Orleans Freight Lines called the president of the Local to ask if he should handle any Overnite freight, and the employee testified he was told, "I can't tell you anything. You do as you please. You don't have to handle no scab freight."

2. An organizer for Teamster Joint Council No. 9 participated in picketing Overnite and asked three over-the-road drivers "to respect the picket line." Since these drivers made no pickups or deliveries at Overnite terminals and thus had no occasion to cross picket lines, the Examiner found this constituted a general request to refuse to handle Overnite freight.

3. At the Georgia-Florida and Alabama terminal an Overnite truck pulled in and the men sat down and refused to unload it. The dock foreman checked the freight himself. The General Counsel's witness admitted that he had signed a statement that he started to work unloading the truck when a union steward told him he was not supposed to handle Overnite freight. The steward testified that he told the men they were not supposed to work when a supervisor (the dock foreman) was working.

4. At the Benton Express Terminal a shop steward, when asked by the employees whether they should handle Overnite freight, replied that under the hot cargo clause in the contract they would not have to handle it, but he did not tell them what they should do. He said that he would refuse to handle it.

5. At the B. C. Terminal, a shop steward told an Overnite driver that he wouldn't check freight off of Overnite because they were on strike. Other employees were around when this statement was made.

6. At Great Southern Trucking Co. a union steward who worked as a driver refused in the presence of other employees to move a trailer with Overnite freight on it. At other times the same steward told other employees that they should use their own judgment as to whether they should handle Overnite freight but he admitted they knew what he would do.

These instances, taken together were sufficient to convince the Examiner of an overall pattern of action to induce secondary employees to cease handling. The other Locals were held responsible on the theory of joint enterprise set forth above. These conclusions were adopted by the Board, and the remedy ordered was that entered by the Board in 11–CC–16.

Locals 71, 55 and 509 filed no exceptions to the Examiner's order and did not answer the N. L. R. B.'s petition in No. 20757. But the Board has conditioned its request for summary enforcement of its order against them on the enforcement of the order against Local 728.

■ We first answer question 1 by stating that we do not believe that the Board's prosecution of two separate cases involving one large, overall scheme by the four Locals involved, warrants dismissal. As noted by the Board, the 8(b) (4) (A) and (B) violations in North Carolina involved primarily the picketing of premises of secondary employers, whereas the Georgia violations were concerned solely with statements by union stewards. Thus there were two distinct legal issues involved, as evidenced by the remand to the Board of 11–CC–16 after the Plauche-

Electric, Inc. case, 135 N.L.R.B. 250, which would have no effect on the instant case. Moreover, convenience of the witnesses would seem to dictate that hearings be held in both Asheville and Atlanta.

If other considerations showed that two separate proceedings were improper, consolidation would have been the proper remedy, not dismissal, which would effectively eliminate any binding determination of the charges since the subsequently filed proceeding in North Carolina was dismissed. Local 728 consciously chose to engage in organizational undertakings in both Georgia and North Carolina and consented to the use of its name in picketing activities in North Carolina as well as Georgia; it should not be heard to complain if it is held to account in both places.

Coming next to the question of the sufficiency of the evidence to sustain the finding of 8(b) (4) (A) and (B) violations, we conclude that the record as a whole sustains the findings of the Board. Although it was legal, at the time of the controversy here, for individual members of the Locals to elect not to handle the "hot cargo", such conduct could not be urged upon the members by others representing the Locals even before the amendments of 1960. We think there is ample basis for the determination by the Board that, although the advice given by the union's representatives was couched in language implying that each member could make his own decision, the pattern set by the leaders both in their volunteering the suggestion on occasion that the member did not have to handle the "hot cargo" and by their own conduct accompanied by pointed reference to the right of the individual to decide for himself, amounted to prohibited activity.

Finally, answering the third question, we conclude that the board order is not an unwarranted remedy under the circumstances found by the Board to exist here. In addition to the facts of this case which resulted in a finding by the Board that Local 728 pursued an overall plan according to which the employees of eight separate neutral employers were induced to refuse to handle Overnite shipments, the Board had other cases involving this Local which we think warranted its decision that it had "demonstrated a proclivity to violate the act by secondary boycott activity against persons with whom it develops disputes." We think the record satisfies the criteria which the Supreme Court has laid down in determining whether a Board Order is of impermissible breadth in N. L. R. B. v. Express Publishing Company, 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930, and Communications Workers v. N. L. R. B., 362 U.S. 479, 80 S.Ct. 838, 4 L.Ed.2d 896. See also N. L. R. B. v. Local 542 etc., 3 Cir., 329 F.2d 512, 1964.

The petition to set aside the order of the Board in No. 19358 is denied. The order against Local 728 in that case is enforced. The application of the Board for enforcement of its order against Locals No. 71, 55 and 509 in case No. 20757 is granted and the Board's order is enforced.