**MEL CROAN MOTORS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 24852.

United States Court of Appeals
Fifth Circuit.

May 17, 1968.

W. D. Deakins, Jr., John H. Smither, Houston, Tex., for petitioner, Vinson, Elkins, Weems & Searls, Houston, Tex., of counsel.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Lawrence M. Joseph, Atty., NLRB, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, N.L.R.B., Washington, D. C., for respondent.

Before THORNBERRY, AINSWORTH and DYER, Circuit Judges.

THORNBERRY, Circuit Judge:

Mel Croan Motors, a Volkswagen dealer in Houston, Texas, petitions for review and the Board cross-petitions for enforcement of an order wherein it found that petitioner committed unfair labor

practices in violation of section 8(a) (1) of the National Labor Relations Act (29 U.S.C. § 151 et seq.). The Board adopted the trial examiner's findings and recommended order.

Mechanics in the service department of Mel Croan Motors held a meeting to discuss grievances on February 23, 1966. After discussion, they designated employees Frields and Ancelot as their spokesmen and returned to the shop. The designated spokesmen then went to service manager Sharp's office and asked Sharp to contact Mel Croan about attending an employees' meeting. According to undisputed testimony, Sharp's first reaction was to ask "who started it and how it got started." The spokesmen refused to answer but continued to insist on seeing Croan. The latter finally arrived and, after a brief talk with all of the mechanics, said that anyone who did not like working conditions could collect his termination check. None of the employees quit. Two days later Frields, Ancelot, and another mechanic named Robert Ferstl were fired. Ferstl attended the meeting on February 23 but was not one of the spokesmen. On the morning of his discharge, he drove a customer's Volkswagen bus with a boat on top into an overhead sliding door. This was his third accident during a short period of employment.

· With respect to the firing of Ancelot, no unfair labor practice was charged. With respect to Frields, an unfair labor practice was charged and contested before the trial examiner, but the part of the Board's order requiring his reinstatement with backpay is not challenged here. Also, the finding that Mel Croan violated section 8(a) (1) of the Act by saying dissatisfied employees would just have to work somewhere else is not challenged here. Thus, the only issues remaining for this Court concern the discharge of Robert Ferstl, the interroga-tion by Sharp, and the scope of the Board's order.[1]

■■■ A. *Discharge of Ferstl.* The examiner concluded that in meeting to discuss grievances, the employees were engaged in concerted activity protected by section 7 of the Act and further concluded that Ferstl would not have been fired but for his involvement in this activity. The employee in question testified that Newman, the shop foreman, told him the meeting brought about his discharge and that his accident was just "icing on the cake." Later the same day, Mel Croan told him he was fired because he, as well as Frields and Ancelot, "got too hot to handle." If believed, and Ferstl's version of events was never specifically denied by Sharp or Croan, this testimony means he would not have been fired but for his involvement in concerted activity even though there might have been other reasons for firing him. On the basis of the sequence of events and a rather persuasive analysis of Croan's actions, the company argues that Ferstl must necessarily have been fired because he was a careless employee, but the fact remains that Ferstl's testimony represents evidence in the record to support the conclusion that he was fired for participation in concerted activity. In short, the examiner's view of the evidence and the company's present two fairly conflicting views. Under these circumstances, we are not empowered to act as original triers of fact but must accept the Board's choice. NLRB v. Monroe Auto Equipment Co., 5th Cir. 1968, 392 F.2d 559; NLRB v. Certain-Teed Products Corp., 5th Cir. 1968, 387 F.2d 639; NLRB v. Universal Packing & Gasket Co., 5th Cir. 1967, 379 F.2d 269. Since substantial evidence supports the Board's finding that Ferstl was discharged in violation of section 8(a) (1), the part of the order requiring his reinstatement with backpay will be enforced.

1. The discharges of Frields, Ancelot, and Ferstl, the interrogation by Sharp, and the implied threat of discharge by Croan were found to be violative of section 8(a) (1). The examiner did not consider whether any of this conduct also violated section 8(a) (3) because he doubted that the informal group of employees in the service department constituted a labor organization as required by that section.

**B.** *Interrogation by Sharp.* The Board's order requires Mel Croan Motors to cease and desist from coercively interrogating employees regarding their activities protected by section 7 of the Act. We must give special attention to the petition for enforcement of this part of the order because the only finding to support it is the finding that service manager Sharp violated section 8(a) (1) when he asked Frields and Ancelot "who started it and how it got started." The Board relies on NLRB v. Camco., Inc., 5th Cir. 1965, 340 F.2d 803, but in that case the company had publicly announced an antiunion policy and there had been systematic, intensive interrogation of employees by company officials over a three-day period. In reading the opinion, one cannot escape the emphasis placed on the totality of circumstances in determining the lawfulness of interrogation. It is important to know whether there is a background of employer hostility and discrimination and also whether the interrogator appeared to be seeking information on which to base reprisals against individual employees. Another relevant question is whether the interrogation took place in an atmosphere of unnatural formality, e. g., whether the employee was called from work to the boss's office. 340 F.2d at 804. In the instant case, there was no evidence of a background of employer hostility, there was no indication Sharp was seeking information on which to base reprisals, and the employees were not summoned to the boss's office but rather went to the service manager's office on their own volition. Considering all the circumstances, we think Sharp's two questions are best characterized as an instinctive reaction to a surprise confrontation and cannot reasonably be exalted to the level of the threatening, coercive, and illegal.

In our view, an isolated inquiry of this kind is controlled by NLRB v. O. A. Fuller Super Markets, Inc., 5th Cir. 1967, 374 F.2d 197. In that case, the single interrogation on which the finding of an unfair labor practice was based was nearly identical to the one here:

Q. All right. Now, what did Mr. Davis [store manager] say to you [employee], and what did you say to him, if anything?

A. He said, "I see you signed the card, the Union card," and I said, "Yes, sir," and he said, "I wonder who started it?" and that was all.

374 F.2d at 203. Since the interrogation was not in itself threatening and since there was no background of employer hostility or pattern of interrogation, this Court refused to sustain the Board's finding of an 8(a) (1) violation. Likewise, we refuse to hold that the minor, isolated exchange between Sharp and the two employees necessitates an order to cease and desist from coercive interrogation. Enforcement of that part of the order is denied.

**C.** *Scope of the Order.* Aside from the specific remedial orders, the Board enjoined the company from interfering with employees' statutory organizational rights "in any other manner." Recent decisions by this Court have established that the Board cannot issue a blanket injunction of this kind unless the company has demonstrated a proclivity to violate the National Labor Relation Act in its entirety or certain sections of the Act. NLRB v. Safway Steel Scaffolds Co. of Georgia, 5th Cir. 1967, 383 F.2d 273, cert. denied, 1968, 390 U.S. 955, 88 S.Ct. 1052, 19 L.Ed.2d 1150; Southwire Co. v. NLRB, 5th Cir. 1967, 383 F.2d 235; NLRB v. Southwire Co., 5th Cir. 1965, 352 F.2d 346. This rule is designed to provide safeguards for the Court's contempt jurisdiction. See NLRB v. Express Publishing Co., 1941, 312 U.S. 426, 433, 61 S.Ct. 693, 698, 85 L.Ed. 930. In the instant case, the Board has successfully established two unlawful discharges and an unlawful implied threat of other discharges—all violations of section 8(a) (1). Since these violations were committed by people inexperienced in dealing with concerted activities and unfamiliar with labor

law, we do not think the company has demonstrated *a proclivity* to violate the Act or certain sections of the Act. Therefore, the broad order will not be enforced.

Enforced in part; denied in part.