**ALLEGHENY PEPSI-COLA BOTTLING COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 13960.

United States Court of Appeals Third Circuit.

Argued Nov. 2, 1962.

Decided Dec. 26, 1962.

530

Robert Lewis, New York City, (Jackson & Lewis, New York City, on the brief), for petitioner.

Standau E. Weinbrecht, Washington, D. C. (Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Melvin J. Welles, Nancy M. Sherman, Attorneys, National Labor Relations Board, on the brief), for respondent.

Before KALODNER, STALEY and SMITH, Circuit Judges.

STALEY, Circuit Judge.

The National Labor Relations Board has found that petitioner violated §§ 8(a) (3) and (5) of the National Labor Relations Act, 29 U.S.C.A. § 158.[1] These conclusions were based upon findings that petitioner had discharged Richard Dommel because he was a union adherent, and had refused to bargain in good faith with the majority representative of an appropriate unit of its employees.

During the fall of 1960, efforts were made to organize the employees at petitioner's warehouse in Lancaster, Pennsylvania. These efforts were met with vigorous countermeasures by supervisory personnel, who engaged in a concerted campaign to discredit the union and to coerce, restrain and otherwise interfere with the rights of the employees in deciding whether they wanted union representation. Indeed, petitioner does not challenge the Board's finding that these acts occurred or that they constituted an unfair labor practice.

The record indicates that Dommel was considered to be a "key man" in determining whether the union would be voted in. The uncontradicted evidence shows that on December 7, 1960, warehouse manager Sears told Dommel that he did not like his attitude and was going to get rid of him at the first opportunity. When Dommel stated that he didn't think anything would be done until the union election was completed, Sears waved his finger in front of Dommel's face and re-

---

1. "§ 158. Unfair labor practices

"(a) It shall be an unfair labor practice for an employer—

* * * * * *

"(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *

"(5) to refuse to bargain collectively with the representatives of his employees * * *."

The Board's finding of a § 8(a) (1) violation is not challenged in this court.

plied, "We'll see what I can do about it * * * I never thought that you were for the company anyways." Later that day Sears reported to company president Lapidus that Dommel had misused a company-leased panel truck on two occasions. Lapidus then ordered Dommel dismissed. The following day there was a strike protesting this dismissal.

The Board adopted the findings of the trial examiner that Sears was discriminatorily motivated in making his report and that because of this, Dommel's discharge violated the Act. Petitioner urges that because the Board concluded that Lapidus himself was not so motivated in ordering the discharge and because Sears' bias was not attributable to the company president, the § 8(a) (3) charge should have been dismissed. This argument does not withstand analysis. Petitioner concedes that Sears is a supervisor within the meaning of the Act. As such, the report he made to Lapidus was obviously within the scope of his employment. There is no question but that it was the cause of Dommel's discharge. That being so, the only issue was whether Sears was discriminatorily motivated in making the report. Federal Tool Corp. and Textile Workers Union, 130 N.L.R.B. 210, 220–221 (1961). In this regard it need only be said that the findings of the trial examiner amply support the conclusion that there was such motivation. To rule otherwise would provide a simple means for evading the Act by a division of corporate personnel functions. It follows that the Board correctly found that Dommel's discharge was discriminatory and that he is entitled to reinstatement with full back pay; that the strike following the discharge was an unfair labor practice strike; and that the employees participating therein are entitled to reinstatement upon an unconditional offer to return to work.

Petitioner's challenge to the finding of a refusal to bargain is tripartite in nature. Initially, it is urged that the Lancaster warehouse employees do not constitute an appropriate unit for collective bargaining purposes. Secondly, petitioner contends that the union did not represent a majority of these employees at the time of the request to bargain. Lastly, it is asserted that the refusal was based on a good faith doubt as to the union's majority status.

The record makes it abundantly clear that the only dispute before the trial examiner and the Board as to the appropriateness of the unit was whether a tractor-trailer driver whose duties were performed partially in Harrisburg and partially in Lancaster should be included in the unit. The colloquy on this point is as follows:

"Trial Examiner: So, at all times material to the allegations in the Complaint, there was one tractor-trailer driver employed by the company?

"Mr. Castiello [company counsel]: That's right. In the Lancaster warehouse.

"Trial Examiner: In the Lancaster warehouse. Well, the unit is confined to the Lancaster plant.

"Mr. Castiello: Fine.

"Trial Examiner: With that statement, do you want to join in a stipulation on that?

"Mr. Kaye [for the General Counsel]: No, sir, I don't believe we'll be able to stipulate to the inclusion of the tractor-trailer driver, at this time, anyway.

"Trial Examiner: That is then the only basis on which you are disputing the unit?

"Mr. Castiello: That's right."

At no time during the proceedings before the trial examiner or the Board did petitioner assert that a unit confined to the Lancaster warehouse was inappropriate. Indeed, in view of the colloquy the examiner and the Board quite properly found that the parties had agreed that such a unit was appropriate. The examiner found it unnecessary to determine whether the tractor-trailer driver should be included because it made no difference whether the unit consisted of nine or

ten employees. The driver's status was the sole unit issue pressed before the Board which made an express finding that he should be excluded. It was only some two months after the Board issued its order that a "Motion to Reopen Record and Remand Proceeding" was filed raising the issue presented here, i. e., that a unit confined to the Lancaster warehouse is inappropriate. In view of petitioner's consent that such a unit was appropriate as contained in the colloquy set out above, and the failure to timely urge any objection before the trial examiner and the Board, we think that the challenge to the unit finding is without merit. See N. L. R. B. v. Ochoa Fertilizer Corp., 368 U.S. 318, 82 S.Ct. 344, 7 L.Ed.2d 312 (1961); N. L. R. B. v. Cheney California Lumber Co., 327 U.S. 385, 66 S.Ct. 553, 90 L.Ed. 739 (1946).

■ The company contends that at the time of the union's request to bargain it did not have majority status. On November 7, 1960, the union mailed a letter to the company which contained a request to bargain coupled with a statement that it represented a majority of the employees. The record is not clear as to whether the union then had a majority. However, it is clear that union authorization cards had been signed by six of the nine employees in the unit when the letter was received on November 9, 1960. Petitioner declares that the date the letter was written is determinative of this issue. But this position is untenable, for it is obvious that an employer is under no duty to bargain until it has received a request to do so. The letter was ineffectual as a bargaining demand until it was received. Since the union had a majority on that date, its status on the date the letter was sent is immaterial. In the Matter of Nash San Diego, Inc. and International Ass'n of Machinists, District 50, 90 N.L.R.B. 86, 87–88 (1950). In any event, we think that the letter was in the nature of a continuing demand.

■ Petitioner's alleged good faith doubt of the union's majority is impugned by the Board's finding that five employees informed the company at a meeting on November 8 that they were in favor of the union. It is asserted that the evidence shows that only four so indicated. However, the testimony of employee Gebhard indicates that there were five individuals who, in response to a supervisor's query, indicated that they were in favor of the union. Additionally, Dommel had informed manager Sears prior to this meeting that there were at least five union adherents. It is true that there may have been some question as to whether the unit consisted of nine or ten employees. However, petitioner's contention that it had a good faith doubt of the union's majority is completely vitiated by the uncontroverted evidence of systematic attempts by supervisory personnel to cajole, coerce, and intimidate its employees and to undermine the union. N. L. R. B. v. Pyne Molding Corp., 226 F.2d 818, 821 (C.A.2, 1955); N. L. R. B. v. Epstein, 203 F.2d 482 (C.A.3, 1953), certiorari denied, 347 U.S. 912, 74 S.Ct. 474, 98 L.Ed. 1068 (1954).

■ This conduct also effectively destroys the challenge to the scope of the Board's order. The portions challenged prohibit petitioner from discouraging membership in "any other labor organization" or "in any other manner" interfering with, restraining, or coercing its employees. In view of the Board's unchallenged findings of numerous attempts by the company to interfere with, restrain, and coerce its employees, it is obvious that the order meets the Supreme Court's test that the restrained violations "bear some resemblance to that which the employer has committed or that danger of their commission in the future is to be anticipated from the course of his conduct in the past." N. L. R. B. v. Express Publishing Co., 312 U.S. 426, 437, 61 S.Ct. 693, 85 L.Ed. 930 (1941). See also, N. L. R. B. v. Highway Truckdrivers & Helpers, Local 107, 300 F.2d 317, 322 (C.A.3, 1962).

The order of the Board will be affirmed, and a form of decree may be submitted.