**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**WIRE PRODUCTS MANUFACTURING CORP., Respondent.**

No. 72-1975.

United States Court of Appeals, Seventh Circuit.

Argued May 21, 1973.

Decided Aug. 21, 1973.

Peter G. Nash, Gen. Counsel, Alan D. Cirker, Atty., National Labor Relations Board, Washington, D. C., for petitioner.

Leonard F. Schmitt, Merrill, Wis., for respondent.

Before CLARK, Associate Justice,* KNOCH, Senior Circuit Judge, and PELL, Circuit Judge.

PELL, Circuit Judge.

The National Labor Relations Board has applied for enforcement of its order against Wire Products Manufacturing Corp., following a finding of the Company's unfair labor practices in violation of §§ 8(a)(1), (3), and (5) of the National Labor Relations Act, as amended.[1]

---

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, is sitting by designation.

1. Section 8, 29 U.S.C. § 158, provides in pertinent part:

"(a) It shall be an unfair labor practice for an employer—
(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
\*      \*      \*      \*      \*

The Company has petitioned this court to review and set aside the order. Wire Products Manufacturing Corp., 198 NLRB No. 90. The controversy evolved from a lockout by the Company of its employees on September 17, 1970.

The trial examiner found, and the Board affirmed the finding, that the Company had violated § 8(a)(1) by various statements of its officers and agents to the effect that the employees should repudiate the grand lodge representative, who was the union's chief negotiator, that the Company would not bargain with the union until another union committee had been selected, albeit it did in fact thereafter continue to bargain, that the employees would get back to work if they repudiated the union in favor of a local union not affiliated with the AFL–CIO, and that the plant would be moved to another city if the workers did not return to work.

The trial examiner did not find that the Company had violated § 8(a)(3) or § 8(a)(5) of the Act by the initiation of the lockout. In making this finding the trial examiner determined that, although the lockout was offensive in that it was not in reasonable anticipation of an immediate strike,[2] it was not illegally motivated. The trial examiner did, however, determine that the lockout became a violation of §§ 8(a)(1) and (3) since the Company had continued operating at a reduced level by employing and utilizing its supervisory employees and non-unit personnel as temporary replacements. In reaching this conclusion, the trial examiner relied on this court's decision in Inland Trucking Co. v. N.L.R.B., 440 F.2d 562 (7th Cir. 1971), enforcing 179 NLRB 350, cert. denied, 404 U.S. 858, 92 S.Ct. 106, 30 L.Ed.2d 100. The Board in the interim had, however, retreated from the broad scope of Inland Trucking Co. by a 3 to 2 vote (Chairman Miller, concurring) in Ottawa Silica Company, 197 NLRB No. 53 (1972). The Board decided not to reach the basis proposed by the trial examiner, but instead relied upon its own determination that the lockout was illegally motivated and thereby constituted an unfair labor practice in violation of §§ 8(a)(1) and (3).[3]

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organiaztion . . . .
\* \* \* \* \*
(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title."

2. The trial examiner gave somewhat cursory attention to evidence which appears to us to have persuasive, probative value to the effect that the lockout was a defensive action in anticipation of a strike. Thus, for example, he stated the assertion that the grand lodge representative had a record of resorting to strike action as a tactic to gain his contract demands was unsupported by any specific proof. However, there was specific testimony of strikes called by the union representative, which testimony was not denied or explained. The trial examiner then said even if the representative had pursued such tactics in the past, no case was made to show that there was cause to anticipate such a strike here. This "strikes" us as being rather an unrealistic appraisal of matters which govern human conduct.

On the negative side, the trial examiner emphasized that there had been no threats of strikes in the negotiations even though those negotiations had been in progress for more than four months. In this type of psychological maneuvering, the failure to announce intentions is not uncommon. We have selected only two examples of that which would seem to cast doubt on the correctness of the trial examiner's finding but do not pursue the matter further because we do not rest our decision on this aspect of the matter.

3. We do not, as the Board did not, reach the issue presented by the continuance of operations during the lockout. In declining to address ourselves to this matter, we are not purporting to overrule this court's decision in Inland Trucking Co. What we have before us is a Board order which the Board asks us to enforce. That order is squarely predicated on the matter of motivation. We are considering the order, including its underpinnings, as entered and not what might have been entered. Because of the inconclusive reflection of existing Board policy on this issue contained in Ottawa Silica Company, we are unable to determine what result the Board would have reached if it

As we read the Company's brief in this court, it does not seriously question the facts as found by the trial examiner with respect to the various § 8(a)(1) violations. Nor can we find any reason given by the Company for our denying enforcement to those portions of the order directed towards those violations. Irrespective of the status of the Company's position on this issue, we hold that the record taken as a whole provides substantial evidence to support the findings of the Board concerning the violations of § 8(a)(1) by Company president Lindstrom and others as noted in paragraph 3, subparagraphs (a) through (e) of the trial examiner's decision. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

The Company contests, however, the findings and conclusions of the Board relating to the illegal and improper motivation of the lockout. In this respect, as sometimes it seems to happen where the Board does not agree with the trial examiner, the Board did not overrule the trial examiner's resolutions with respect to credibility but then proceeded to reject the inference which the trial examiner had drawn from the facts he found —that the lockout had not been illegally motivated. Stressing the various nearly contemporaneous acts (noted above) which the trial examiner had determined were § 8(a)(1) violations, the Board concluded that the improper motivation was clearly demonstrated. Although it did not purport to upset the factual determination of the trial examiner, the Board did determine only as a matter of fact and not as a matter of law that the lockout was improperly motivated. The Board, thereupon, ordered the Company to "make whole" all of its locked-out employees for any loss of earnings suffered during the lockout period. For the reasons given below, we decline to enforce this portion of the Board's order.

Our scope of review of Board findings of fact is delimited by 29 U.S.C. § 160(e) and Universal Camera Corp. v. N.L.R.B., supra, 29 U.S.C. § 160(e) provides in pertinent part: "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." The Court in Universal Camera added the caveat that the review of the record should not be one-sided, concentrating only on evidence which might support the Board's findings. "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." 340 U.S. at 488, 71 S.Ct. at 464.

Of particular significance to the case before us is the fact that Universal Camera involved the situation of the Board rejecting findings of the trial examiner. The Court held that the trial examiner's report should be considered as a part of the record and that it should be given such "probative force as it intrinsically commands." 340 U.S. at 495, 71 S.Ct. at 468. The Court summarized its view in the following passage:

"We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. The 'substantial evidence' standard is not modified in any way when the Board and its examiner disagree. We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibili-

had considered the issue. We will not speculate on the matter. The only aspect of some certainty is that if the Board had resolved the particular issue adversely to

its *Inland Trucking Company* position, there would have been no order involving that issue presented to us for enforcement.

ty in the particular case." 340 U.S. at 496, 71 S.Ct. at 469.

■ Although the Board in the present case purports not to have rejected the finding of the trial examiner with respect to any credibility determinations, it is clear from our reading of the opinions of the trial examiner and of the Board that the Board has in fact rejected the ultimate finding of the trial examiner concerning the motivation of the lockout. Although the Board contends that motivation is only an inference derived from the facts found and not in and of itself a factual determination, the Board's opinion reveals the contrary. Reviewing the record as a whole, including the trial examiner's opinion with its findings as to credibility of witnesses, we conclude for the reasons hereinafter set out that the finding of the Board with respect to the Company's motivation is not supported by substantial evidence.[4]

■ The Supreme Court in American Ship Building Co. v. N.L.R.B., 380 U. S. 300, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965), held that an employer's use of a lockout to support his bargaining position after impasse was reached did not violate § 8(a)(1) or (3). The Court did point out "[t]here was not the slightest evidence and there was no finding that the employer was actuated by a desire to discourage membership in the union as distinguished from a desire to affect the outcome of the particular negotiations in which it was involved." 380 U.S. at 313, 85 S.Ct. at 964. In the companion case of N.L.R.B. v. Brown, 380 U.S. 278, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965), the Court stated that "where . . . the tendency to discourage union membership is comparatively slight, and the employers' conduct is reasonably adapted to achieve legitimate business ends or to deal with business exigencies, we enter into an area where the improper motivation of the

employers must be established by independent evidence." 380 U.S. at 287–288, 85 S.Ct. at 986. American Ship Building and Brown, when read together, reflect that lockouts are not per se violations of the National Labor Relations Act. "[T]he Board must find from evidence independent of the mere conduct involved that the conduct was *primarily* motivated by an antiunion animus." (Emphasis added.) Brown, 380 U.S. at 288, 85 S.Ct. at 986. Nothing in N.L. R.B. v. Great Dane Trailers, Inc., 388 U.S. 26, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967), leads to a contrary conclusion because there the Court concluded that the employer's conduct was "inherently destructive" of important employee rights, thus relieving the Board of proving antiunion motivation. Further, the Company there offered no evidence of legitimate motives. This decision does not affect the holdings in American Ship Building and Brown to the effect that a lockout by an employer without more does not reach that level of destructiveness.

Prior to Brown and American Ship Building, any real concept in Board decisions of a strike and a lockout having an area of equivalency appears to have been lost in a choppy sea of semanticism. Whatever may have been true when the Wagner Act became law can scarcely furnish present day guidelines. The strike is a potent economic weapon which may, and often is, wielded with disastrous effect on its employer target. Recognition was given to the lockout as a legitimate economic weapon on the part of the employer in American Ship Building: "we cannot see that the employer's use of a lockout solely in support of a legitimate bargaining position is in any way inconsistent with the right to bargain collectively or with the right to strike." 380 U.S. at 310, 85 S.Ct. at 963. "[T]he right to bargain collectively does not entail any 'right' to insist on one's position free from economic

---

4. On the other hand, if this is not a finding of fact, then 29 U.S.C. § 160(e) does not apply so as to bind this court to uphold the Board's determination if that determination is supported by substantial evidence.

disadvantage." 380 U.S. at 309, 85 S.Ct. at 962.

■ The implicit recognition of some degree of equivalency between the respective weapons of economic leverage should not be thwarted via an artificially contrived but substantially unsupported factual basis. Feelings are intense and deeply held by both parties when a lack of employment occurs, whether as the result of a strike or a lockout. The employees are denied their pay checks. The employer is denied the normal processes of production. Statements and conduct which could be the basis for inferring animus, which the parties each entertain toward the other, are not difficult to detect. The standard here, however, is not the existence of an inchoate animus but rather whether that feeling did in fact motivate. In the legislative scheme, the courts serve some more worthwhile purpose than that of automatically rubberstamping approval of Board determinations. In the consideration of this particular issue, "[a]n unlawful purpose is not lightly to be inferred. In the choice between lawful and unlawful motives, the record taken as a whole must present a substantial basis of believable evidence pointing toward the unlawful one." N.L.R.B. v. McGahey, 233 F.2d 406, 413 (5th Cir. 1956).

With the above principles in mind, we turn to the record in this case. The uncontradicted testimony was that the decision concerning bargaining tactics had been entrusted to the Company's attorneys. Mr. Schmitt, the Company's principal attorney, testified to the conditions which he imposed on the Company before he would undertake to handle the labor negotiations:

" . . . that I would be in complete charge of the bargaining tactics and procedures, and would only come back to them [management] when it came time to ratify the final contract or provisions of the final contract."

The Company's president, Lindstrom, testified that "we turned this all over to Mr. Schmitt and his associate, feeling they were competent to handle our negotiations. They had full power to do so and, therefore, we didn't want to." Furthermore, Lindstrom confirmed Schmitt's testimony that during the entire negotiation process the Company always went along with Schmitt's recommendations. With respect to the decision to lock out the employees, Schmitt testified that he was the one to recommend the lockout. Further, when he actually recommended that the lockout be implemented, the owners acquiesced. Lindstrom corroborated this view as did Hill and Dupke, the other two operating officers. Finally, the actual notice of the lockout was posted at Schmitt's direction.

■ The Board is correct when it states that generally a company cannot insulate itself from the illegal motivations of its officers by nominally delegating the decision-making responsibility to attorneys who have no such motivation. But the cases cited by the Board as controlling in the present case do not reach the situation before us. In both N.L.R.B. v. E.D.S. Service Corp., 466 F.2d 157 (9th Cir. 1972), and Allegheny Pepsi-Cola Bottling Co. v. N.L.R.B., 312 F.2d 529 (3d Cir. 1962), the employee was dismissed on the recommendation of a supervisor whose motivation was arguably improper. The courts held in both cases that such a dismissal based solely on an improperly motivated recommendation was not saved by the pure motives of the officer who actually ordered the dismissal.[5] What both courts focused on, quite properly, was the motivation of the actuating force. In the present case, the evidence

---

5. The criminal law analogue is found in Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), where the Court held that the fact that an arrest was made pursuant to a police radio bulletin did not add or detract from the underlying requirement for an arrest.

is uncontroverted that the attorneys were that force. There is no evidence in the record to support a finding that the attorneys who conducted the Company's bargaining had any improper motivation in using the permissible procedure of a lockout.

The evidence that the Board cites in support of its finding relates to the obvious necessity of obtaining the approval of the owners before the lockout was initiated and the evidence relating to the § 8(a)(1) violations by Lindstrom and other agents of the Company. The evidence of "intimate involvement" of Lindstrom in bringing the lockout about is just not there. The record is clear that the Company did, in fact, leave all bargaining to its attorneys. Further, the General Counsel conceded that the Company did not bargain in bad faith before the lockout. Also, there is ample support for the trial examiner's finding that a bona fide impasse had been reached on a principal issue between the parties, that of union security. There had been 10 bargaining sessions, several with a federal mediator.

We thus are left with the Board's contention that the § 8(a)(1) violations are proof of the illegal motivation for the lockout. As noted above, the trial examiner refused to make such a finding. The pre-lockout evidence that the General Counsel presented concerning similar activities was disbelieved by the trial examiner on the basis of a credibility determination.

■ The most significant indication of motivating animus on the Company's part is found in Lindstrom's tavern tongue-loosened remarks to various employees shortly after the notice of the lockout was posted. While, as we have stated above, there is little doubt that such threats and accusations rise to the level of § 8(a)(1) violations, we are unable to say that, taken alone, they are sufficient to establish that antiunion animus was even a partial motivating

force in the decision to call a lockout. The trial examiner's finding on this point is entitled to a substantial weight since of necessity it was based essentially on the credibility of the various witnesses who testified as to the decision-making process. Apparently, the trial examiner, in rejecting the General Counsel's reliance on the § 8(a)(1) violations, believed the Company's attorneys and officers when they testified that it was the attorneys who had made the decision on a lockout and that the owners merely had assented.

The other incidents on which the Board relies for support for its finding involve conversations that were not contemporaneous with the posting of the notice. Rather, they occurred over the months during which the lockout was in force. Certainly as to those incidents the probative value is marginal insofar as going to show that the lockout was improperly motivated *ab initio*. Neither the Board nor the trial examiner addressed the question of whether the lockout, although proper at the time it was planned and announced, became an unfair labor practice in its continuation, *i.e.*, insofar as subsequent motivation was concerned.[6] It would be inappropriate for us to comment on this issue without any background findings. Suffice it to say that whatever probative value the other § 8(a)(1) violations have in this case relates to that question and not, at least on the facts of this case, to the order which the Board seeks enforced.

■ The Board also disagreed with the trial examiner and found that the various statements made in violation of § 8(a)(1) by the Company's officers and agents constituted in combination with the lockout itself, which the Board had determined was illegally motivated, a violation of § 8(a)(5), refusal to bargain in good faith, even though the General Counsel conceded that the Company did not "otherwise violate the Act during

---

6. The trial examiner, as previously noted herein, did find that the lockout became

an unfair labor practice because of the use of replacement employees.

the bargaining sessions that took place before, during, and after the lockout." Since we have determined that the Board's finding that the lockout was illegally motivated *ab initio* is not supported by substantial evidence on the record as a whole, we also disagree with the determination of the violation of § 8(a)(5). The Board further found that the Company's failure to pay the November health insurance premium violated § 8(a)(1) as it was conceded that the premium was not paid due solely to the allegedly illegal lockout. Because of our holding on the matter of illegal motivation, the Board's finding on this issue is not correct. Since the premiums involved were for November and apparently December, it is conceivable that the Company would have violated § 8(a)(1) in this respect if the lockout was being continued at that time on the basis of illegal motivation. This theory was not, however, presented to the trial examiner or the Board, and we decline to pass on it initially.

■ Finally, we must examine the Board's determination that the discharge of Marilyn Kufahl was in violation of §§ 8(a)(1) and (3). The trial examiner made detailed findings relating to Kufahl's union activity and to the unequal application of the Company's rules in her discharge. The Board adopted the trial examiner's opinion on this point. There is clearly substantial evidence to support these findings when we view the record as a whole. Therefore, those portions of the Board's order dealing with Kufahl's discharge must be enforced. Universal Camera Corp. v. N.L. R.B., *supra*, 340 U.S. at 490, 71 S.Ct. 456, 95 L.Ed. 456.

In accordance with the foregoing and by way of disposition of all issues raised in this proceeding, the following portions of the Board's order shall be, and hereby are ordered, enforced, to-wit: sections 1(a) through (e); sections 2(d) and 2(h); and section 2(g) to the extent that the Notice is modified to comply with this opinion. The remain-

der of the Board's order is not enforced and is set aside.

Enforcement granted in part and denied in part.