UNITED STATES DEPARTMENT
OF JUSTICE, Appellee

v.

DANIEL CHAPTER ONE and James Feijo, Individually, and as an Officer of Daniel Chapter One, Appellants.

No. 15-5155
September Term, 2015

United States Court of Appeals,
District of Columbia Circuit.

Filed On: May 18, 2016

Douglas N. Letter, Esquire, Attorney, Scott R. McIntosh, Attorney, Molly Rebecca Silfen, U.S. Department of Justice, (DOJ) Civil Division, Appellate Staff, Washington, DC, for Plaintiff–Appellee.

Stephen Dunkle, Robert Sanger, Sanger Swysen & Dunkle, Santa Barbara, CA, for Defendants–Appellants.

Before: Tatel, Circuit Judge, and Sentelle and Randolph, Senior Circuit Judges.

## JUDGMENT

Per Curiam

This appeal from the order of the United States District Court for the District of Columbia was presented to the court and briefed and argued by counsel. The court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is

**ORDERED AND ADJUDGED** that the judgment of the District Court be affirmed.

In 2008, the Federal Trade Commission filed an administrative complaint against

Daniel Chapter One and its "Overseer," James Feijo, which accused the defendants of using deceptive and unfair acts and practices to market dietary supplements in violation of sections 5(a) and 12 of the Federal Trade Commission Act, 15 U.S.C. §§ 45(a), 52. More specifically, the complaint alleged that the defendants had made unsubstantiated claims about their dietary supplements' ability to prevent, treat, and cure tumors and cancers. During the administrative proceeding that followed, the Commission found that the defendants had, in fact, violated the Act, and it issued a cease-and-desist order that became effective April 2, 2010. Among other things, the order: (1) prohibited the defendants from representing that any dietary supplement or other health-related product "prevents, treats, or cures ... any type of tumor or cancer" unless the representation was true, nonmisleading, and substantiated by "competent and reliable scientific evidence" at the time it was made; (2) prohibited the defendants from making any representation about the "efficacy, performance, or health-related benefits" of any dietary supplement or other health-related product unless the representation was true, nonmisleading, and substantiated by "competent and reliable scientific evidence" at the time it was made; and (3) required the defendants to mail a notice to certain customers, advising them that the Commission had found the defendants' advertising claims deceptive. *Daniel Chapter One*, 149 F.T.C. 1574, at *3–4 (2010). The defendants subsequently petitioned this court for review.

While their petition was pending, the Department of Justice filed the present suit under sections 5(*l*), 13(b), and 16(a) of the FTC Act in order to obtain permanent injunctive relief, consumer redress, and civil penalties against the defendants for continued violations of the Commission's cease-and-desist order. It also sought and obtained an order from this court directing the defendants to comply with the Commission's cease-and-desist order while the court completed its review. Neither action stopped the defendants' troubling behavior. Consequently, after this court denied the defendants' petition for review, the government requested, and in June 2011 obtained, a preliminary injunction, which again directed the defendants to comply with the Commission's cease-and-desist order. Shortly thereafter, the government moved to hold the defendants in contempt of court for violating the district court's injunction. Following a hearing on May 9, 2012, the district court found that the defendants were, indeed, in contempt, and it gave them two weeks to purge the contempt or face severe monetary penalties and imprisonment. Only then did the defendants appear to cease their illegal conduct.

Some months later, the district court issued a lengthy opinion finding that the defendants had repeatedly violated the Commission's cease-and-desist order since it went into effect on April 2, 2010. *See United States Department of Justice v. Daniel Chapter One*, 896 F.Supp.2d 1 (D.D.C. 2012). Then, on March 31, 2015, the district court entered final judgment in the case. *See* Order at 2–5, *United States Department of Justice v. Daniel Chapter One*, No. 10-1362 (D.D.C. Mar. 31, 2015). Among other things, the district court's final order: (1) permanently enjoined the defendants from advertising or selling any dietary supplement; (2) required the defendants to pay $1,345,832.43 in equitable monetary relief; and (3) required the defendants to pay $3,528,000 in civil penalties. The defendants now challenge the district court's authority to order such relief.

The defendants first contend that the district court's permanent injunction was

too broad. They argue that the court was limited to enjoining acts of the same "type or class" as those found to violate the law, which, in their view, means that the court should have gone no further than enjoining them from representing that any dietary supplement prevents, treats, or cures tumors and cancers. Appellants' Br. 9–10 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 132, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969)). They also suggest that the court failed to consider that they had been "in compliance with the FTC Order since their contempt was purged on May 24, 2012, almost three years prior to the issuance of the expanded injunction." *Id.* at 10.

We review the district court's entry of a permanent injunction under the highly deferential abuse-of-discretion standard. *See United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1110 (D.C. Cir. 2009). As this court has previously explained, "Since a district judge has wide latitude in fashioning a remedy, we will not disturb the trial court's remedial choice unless there is no reasonable basis for the decision." *Securities & Exchange Commission v. First City Financial Corp.*, 890 F.2d 1215, 1228 (D.C. Cir. 1989).

The principal question in determining whether injunctive relief is appropriate is, as the district court noted in its opinion, whether there is a reasonable likelihood of future violations. *See United States Department of Justice v. Daniel Chapter One*, 89 F.Supp.3d 132, 143 (D.D.C. 2015) (citing, *inter alia*, *NLRB v. Express Publishing Co.*, 312 U.S. 426, 436–37, 61 S.Ct. 693, 85 L.Ed. 930 (1941)); *see also Philip Morris*, 566 F.3d at 1132 ("To obtain equitable remedies, the government must demonstrate a reasonable likelihood of further violations in the future." (internal quotation marks and alteration omitted)). The principal focus in fashioning an injunction

is on preventing future violations of the type previously committed. *See Aviation Consumer Action Project v. Washburn*, 535 F.2d 101, 108 (D.C. Cir. 1976).

Here, in broadening the scope of its injunction upon entry of final judgment, the district court emphasized the defendants' repeated and flagrant disregard for the Commission's cease-and-desist order, this court's order *pendent lite*, and its own preliminary injunction order. In particular, it stressed that:

> From April 2, 2010, when the FTC Order went into effect, until May 24, 2012, when the defendants came into compliance with the FTC Order, the defendants intentionally and knowingly violated the FTC Order. From November 22, 2010, when the D.C. Circuit issued an Order enjoining the defendants to "obey forthwith the modified final order," until May 24, 2012, the defendants intentionally and knowingly violated the D.C. Circuit's Order. *See* Per Curiam Order, *Daniel Chapter One*, No. 10-1064 (D.C. Cir. Nov. 22, 2010). From June 22, 2011, when [the district court] issued a preliminary injunction, until May 24, 2012, the defendants intentionally and knowingly violated [the district court's] preliminary injunction. *See* Order and Memorandum Opinion, ECF Nos. 31 and 32.

*Daniel Chapter One*, 89 F.Supp.3d at 144. The district court also underscored that "[t]he defendants were well aware of what they were required to do to comply with the various orders, yet *deliberately* chose to continuously ignore and violate all orders." *Id.*

The court acknowledged the defendants' argument that they had been in compliance with the Commission's cease-and-desist order since May 24, 2012, but explained that such fact presented no bar to its entry of a permanent injunction. *Id.* at 144–45. And, it continued, in its view, the

facts supported the entry of a broader injunction "in order to protect the public." *Id.* at 145. It explained that the defendants' "pattern of deceiving consumers in complete disregard of orders from the FTC, [the district court], and [this court] raise[d] serious concerns that the defendants would inflict further injury on consumers in the future without the[ ] modifications." *Id.* It further observed that "the defendants' dietary supplement marketing involve[d] deliberate, deceptive strategies that [we]re easily adaptable or transferable to other products," as demonstrated by the fact that the defendants made "health-related representations about their other products." *Id.*

■ Although district courts should be cautious about entering injunctions as broad as that issued here, we are ultimately unconvinced that the district court abused its discretion in this case. As noted above, the court found that for over two years, the defendants exhibited a complete disregard for the Commission's cease-and-desist order, and only stopped their illegal practices when the district court threatened rapidly escalating monetary penalties and imprisonment. The district court found, moreover, that the defendants deliberately violated the various orders and could easily transfer their deceptive practices to their other products. Under these circumstances, we believe that it was not unreasonable for the district court to conclude that in the absence of a broad injunction, the defendants would continue to violate the FTC Act's prohibition against deceptive and unfair acts and practices.

■ The defendants next challenge the district court's authority to issue equitable monetary relief under section 13(b) of the FTC Act. In their view, the statute's text, purpose, and structure conclusively show that section 13(b) authorizes only injunctive relief. Although nine courts of appeals have already reached the opposite conclusion, we need not wade into this issue here. As the government points out, it brought this suit pursuant to section 13(b) *as well as* section 5(*l*) of the FTC Act. The defendants do not contest the district court's authority to award equitable monetary relief under the latter provision, nor do they contend that the district court's analysis would have looked any different under that provision. Accordingly, even assuming section 13(b) does not authorize such relief, the district court's invocation of section 13(b) to award equitable monetary relief constituted harmless error. *See* 28 U.S.C. § 2111 ("On the hearing of any appeal . . ., the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."); Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."); *see also, e.g., United States v. Ismail*, 219 F.3d 76, 78 (2d Cir. 2000) (district court's citation to the wrong restitution statute in criminal case was insufficient to overturn restitution schedule on appeal because the district court had "thoroughly considered the factors it was required to consider before imposing restitution and the payment schedule").

■ Finally, the defendants challenge the district court's civil penalty award on the ground that the court failed to properly consider their ability to pay civil penalties. They argue that the district court erred in applying the "sham affidavit" rule to disregard a supplemental declaration that they filed in October 2014 about their changed financial circumstances. That rule "precludes a party from creating an issue of material fact by contradicting prior sworn testimony unless the shifting party can offer persuasive reasons for believing the supposed

correction is more accurate than the prior testimony." *Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1030 (D.C. Cir. 2007) (internal quotation marks omitted). Although we agree that the district court may have misapplied the rule, as the defendants' supplemental declaration presented *new* information rather than contradictory information, we nonetheless believe that the district court's award should be affirmed. In its decision below, the district court noted that even if the declaration were to be believed, the information in it would not change its assessment "because courts considering a defendant's ability to pay a civil penalty look beyond the funds and assets currently in the defendant's possession." *Daniel Chapter One*, 89 F.Supp.3d at 154. More specifically, the court concluded that it need not disregard assets that a defendant has dissipated during the course of a lawsuit when calculating a defendant's ability to pay. *Id.* at 153–54. On appeal, the defendants fail to address this aspect of the district court's decision in their opening brief. Instead, they focus exclusively on the district court's discussion of the sham affidavit rule. *See* Appellants' Br. 25–28. And although they do address the issue in their reply brief (albeit cursorily), *see* Appellants' Reply Br. 13–14, this court has repeatedly said that it "do[es] not ordinarily notice an argument that first appears in a reply brief," *Heller v. District of Columbia*, 801 F.3d 264, 273 n. 1 (D.C. Cir. 2015). Consequently, the defendants have forfeited any argument that the district court erred when it concluded, in the alternative, that even if it credited the defendants' declaration, the information in it would not alter its analysis of the defendants' ability to pay because it was permitted to "look beyond the funds and assets currently in the defendant[s'] possession." *Daniel Chapter One*, 89 F.Supp.3d at 154.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc.* *See* Fed. R. App. P. 41(b); D.C. Cir. Rule 41.